**ORDERED.**

**Dated:  January 16, 2025**

_Jacob A. Brown_
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:                                              Case No. 3:19-bk-1010-JAF

SEAWALK INVESTMENTS, LLC,
                                                    Chapter 11

    Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case is before the Court upon a remand from the United States District Court. What is now at issue in this over five-year two-party dispute is the extent to which Seawalk Investments, LLC ("Debtor") is obligated to pay the almost $300,000.00 in attorney's fees incurred by Sky Enterprises, LLC ("Sky"), Debtor's secured creditor. Upon an extensive review of the record of this case and briefs filed

by the parties, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## Findings of Fact

I.    General Background

On March 21, 2019 (the "Petition Date"), Debtor filed a Chapter 11 bankruptcy petition.[2] Debtor is a Florida limited liability company that owns a mixed-use commercial property consisting of short-term lodging and long-term residential rental spaces, as well as retail/commercial space (the "Property"), located in Jacksonville Beach, Florida.[3] The Debtor has two members/owners, an individual named James R. Stockton, and a company named Bebe LLC.[4] On its schedules, Debtor valued the Property at $3.75 million and listed the debt owed to NLA Jacksonville, LLC ("NLA"), the first mortgage holder on the Property, at $735,000.00, thus asserting an equity cushion for NLA of over $3 million.[5]

The Amended and Restated Renewal Promissory Note (the "Note"), which memorialized the mortgage debt (the "Mortgage Debt"), provided for the payment by Debtor of NLA's reasonable attorney's fees incurred in the collection of the Mortgage Debt, otherwise incurred in protecting and preserving the lien of the Mortgage, and

---

[1] *See* Fed. R. Bankr. P. 7052. The Court issued Findings of Fact and Conclusions of Law on October 28, 2021 ("*Seawalk I*") on this same issue. *See* 2021 WL 5016600 (Bankr. M.D. Fla. Oct. 28, 2021). The Findings of Fact in *Seawalk I* are incorporated herein and are reiterated in large part for purposes of clarity.
[2] Doc. 1.
[3] *Seawalk I*, 2021 WL 5016600, at *1.
[4] *Id.*
[5] Doc. 23.

incurred in enforcing, sustaining, protecting, or defending the lien or priority of the Mortgage against all persons.[6] Mr. Stockton executed a personal guaranty as to the Mortgage Debt.

II.    <u>Insurance Proceeds and Cash Collateral</u>

In November 2018, a fire occurred at the Property. The fire was small, but a dispute arose between NLA and Debtor as to how the insurance proceeds should be used. This dispute and Debtor's inability to obtain the insurance proceeds caused the filing of this bankruptcy case.[7] The Court previously found that as of the Petition Date, Debtor was not in default on the Note.[8]

Litigation as to the insurance proceeds and cash collateral issues between Debtor and NLA was protracted. On April 8, 2019, Debtor filed an emergency motion to use cash collateral, to which NLA filed a limited objection.[9] After a hearing on April

---

[6] Sky's Ex. 1, September 1, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim. The Note provides in pertinent part:

<u>PAYMENT OF COSTS.</u>  In the event of a default, Borrower covenants and agrees to pay all and singular the costs, taxes, fees, and expenses, including Lender's **reasonable attorneys' fees** (including on appeal and **in bankruptcy**), documentary stamp taxes, intangible taxes and other excise taxes, and the cost of title evidence, incurred or expended at any time by Lender in the collection of the loan evidenced hereby and/or foreclosure of the Mortgage or otherwise **incurred in protecting and preserving the lien of the Mortgage or in enforcing Lender's rights under this Promissory Note**, the Mortgage, or under any other instrument evidencing and/or securing the indebtedness evidenced hereby, or in enforcing, sustaining, protecting, or defending the lien or priority of the Mortgage against any and all persons, including, but not limited to, lien claimants or the exercise of the power of eminent domain or other governmental power of any kind. (emphasis added).

[7] *Seawalk I*, 2021 WL 5016600, at *1.

[8] *Id.* Sky disputes this, alleging that the Note matured on June 20, 2018, prior to the Petition Date. The Court's conclusions in these Findings of Fact and Conclusions of Law would not change even if the record was clear that the Note had matured prior to the Petition Date.

[9] Docs. 16, 26.

18, 2019, the Court granted Debtor's motion on an interim basis based upon the parties' agreement.[10]

On June 7, 2019, almost two months after the cash collateral hearing, Debtor submitted a proposed order on cash collateral.[11] NLA objected to the proposed order, asserting that Debtor's proposed monthly budget for maintenance increased from an agreed $300.00 monthly to $2,900.00, essentially retroactively authorizing what NLA alleged was Mr. Stockton's unauthorized post-petition use of cash collateral.[12] NLA sought another hearing on cash collateral prior to the entry of an order authorizing the use of cash collateral, which the Court scheduled for June 25, 2019.[13] At the June 25, 2019 hearing, the parties informed the Court they intended to file a joint motion and agreed order establishing procedures for the disbursement of the insurance proceeds.[14] The Court granted use of cash collateral on an interim basis until a further hearing on July 22, 2019.[15] On July 19, 2019, the Court entered an Agreed Order Authorizing Debtor's Interim Use of Cash Collateral and Providing Adequate Protection.[16]

### III.    The Teresa L. Hapsis Trust's Secured Claim

On June 19, 2019, the Teresa L. Hapsis Trust (the "Trust") filed a secured proof of claim in the amount of $390,271.08, which was designated as Claim 4. Claim 4,

---

[10] Doc. 27.
[11] Doc. 33.
[12] Doc. 35.
[13] Docs. 35, 37.
[14] Doc. 47.
[15] *Id.*
[16] Doc. 55.

which is secured by a mortgage on the Property, was signed under penalty of perjury and never amended. Claim 4 did not list a value for the Property and listed $0 of the claim as unsecured.

IV.    NLA/Sky's Secured Claim

On July 3, 2019, NLA filed a secured proof of claim in the amount of $750,967.07, which was designated as Claim 5.[17] Claim 5 indicated the original principal balance on the Note was $975,000.00, over $200,000.00 more than the amount owed as of the Petition Date.[18] Claim 5, which was signed under penalty of perjury and never amended, indicated that the value of the Property was unknown and listed $0 of the claim as unsecured.[19]

V.    Extensive Plan, Discovery, and Other Bankruptcy Litigation

On July 17, 2019,  Debtor filed a disclosure statement and Chapter 11 plan of reorganization (the "Plan"), which provided for $4,850.67 monthly payments to NLA ($735,000.00 amortized over twenty years at 5% interest) with a balloon payment due on October 1, 2029.[20] On July 22, 2019, the Court entered an Order Conditionally Approving the Disclosure Statement, Scheduling Confirmation Hearing [for August

---

[17] Sky's Ex. 1, September 21, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim.
[18] *Id.*
[19] *Id.*
[20] Docs. 52, 53.

28, 2019], and Fixing Deadlines.[21] The Trust, NLA, and the United States Trustee filed objections to confirmation of the Plan.[22]

On August 9, 2019, the Court entered a Second Agreed Order Authorizing Debtor's Interim Use of Cash Collateral and Providing Adequate Protection and setting a final hearing for October 10, 2019.[23] On August 20, 2019, NLA filed a Motion for Entry of an Order Establishing Procedures for Disbursement of Insurance Proceeds to Pay for Remediation of Fire Damage (the "Disbursement Motion") in which it alleged that it had prepared and sent to Debtor what it hoped would be an agreed order regarding the insurance proceeds.[24] However, it alleged Debtor waited three weeks to respond and then provided its own "stripped-down version on a take-it-or-leave-it basis."[25]

Likely recognizing that the Plan was not going to be confirmed prior to the expiration of the exclusivity period on September 17, 2019, on August 26, 2019, Debtor filed a Motion to Extend the Exclusive Period for filing a Chapter 11 Plan, seeking an extension of the exclusivity period until January 15, 2020.[26] The Trust[27] and NLA filed objections to the Motion to Extend Exclusivity.[28]

---

[21] Doc. 58.
[22] Docs. 74, 76, 77.
[23] Doc. 66.
[24] Doc. 75.
[25] *Id.*
[26] Doc. 86.
[27] At that time the Trust was Debtor's second largest creditor and held an approximate $425,000.00 debt secured by a purchase money security interest in the Property second in priority to NLA's mortgage.
[28] Docs. 90, 98.

On August 27, 2019, the Trust filed an Expedited Motion to Appoint a Trustee and/or Examiner.[29] The Court scheduled a trial on the Disbursement Motion, the Motion to Extend Exclusivity, the Motion for Approval of Disclosure Statement, Confirmation of the Plan, and the Motion to Appoint Trustee and/or Examiner for September 9, 2019.[30] At the September 9, 2019 trial, the Court granted the Motion to Extend Exclusivity and continued the other matters to November 6, 2019.[31] On September 18, 2019, the Court entered an order granting the Motion to Extend Exclusivity to January 15, 2020.[32]

On October 10, 2019, the Court held a final hearing on the Motion to Use Cash Collateral and Determine Adequate Protection,[33] which it granted by order dated October 23, 2019.[34] The Court found that NLA was adequately protected by its lien interest in the Property.[35] On October 31, 2019, Debtor filed several § 1129(b)[36] motions, including as to NLA.[37]

On November 4, 2019, Debtor and the Trust filed a Motion to Approve Compromise (resulting from mediation), which provided Debtor would pay the $425,000.00 owed to the Trust by November 1, 2021, under terms of a modified loan

---

[29] Doc. 91.
[30] Docs. 102, 106, 104, 105, 107.
[31] Doc. 124.
[32] Doc. 129.
[33] Doc. 135.
[34] Doc. 142.
[35] *Id.*
[36] Hereinafter, all code sections refer to the United States Bankruptcy Code located at Title 11 of the United States Code unless otherwise noted.
[37] Docs. 147, 148 (as to NLA), 149, 150, 151. These are commonly referred to as cramdown motions.

that included payments at a 6% interest rate and 20-year amortization, along with a balloon payment in November 2021, with an option to extend the payment deadline.[38] The Court approved the compromise by Order dated December 2, 2019.[39]

On November 5, 2019, Debtor filed an Amended Chapter 11 Plan of Reorganization (the "First Amended Plan").[40] The First Amended Plan incorporated the settlement agreement between Debtor and the Trust but did not affect the treatment of NLA.[41] On November 6, 2019, NLA filed an Expedited Motion to Convert the Case to Chapter 7 or Dismiss Case (the "Motion to Convert").[42] Alleging numerous improprieties by Debtor, the Motion to Convert sought conversion of the case to Chapter 7, or alternatively, dismissal of the case with a one-year injunction on refiling.[43] The Court scheduled a hearing on the Motion to Convert for December 3, 2019.[44]

On November 6, 2019, the Court conducted the rescheduled trial on the Disbursement Motion, the Motion for Approval of Disclosure Statement, and Confirmation of the First Amended Plan. The Court conditionally approved the Disclosure Statement and set a rescheduled trial on final approval of the Disclosure Statement, Confirmation of the First Amended Plan, the Motion to Convert, and

---

[38] Doc. 157.
[39] Doc. 175.
[40] Doc. 160.
[41] *Id.*
[42] Doc. 161.
[43] *Id.*
[44] Doc. 165.

Debtor's § 1129(b) Motion as to NLA for April 2, 2020.[45] On November 15, 2019, the Court entered an order governing the insurance proceeds.[46] Repairs were completed, and full operation of the Property resumed in August 2020.[47]

VI.    Sky Acquires NLA's Claim

On February 3, 2020, several months after Debtor had filed the Plan and the First Amended Plan, which provided for full payments, with interest, to NLA, Sky purchased the Mortgage Debt from NLA.[48] The purchase price was $760,000.00. On February 17, 2020, NLA filed a notice of transfer of claim indicating it had transferred its claim to Sky on February 7, 2020.[49]

Jean Bakkes, the principal of Sky, first offered to purchase the Property in 2012 or 2013.[50] Mr. Bakkes testified that he learned in early 2018 that his purported longtime friend, Gus Hapsis, the beneficiary of the Trust, had not received any interest or other payments from Debtor on the debt owed to the Trust pursuant to a prior agreement between Debtor and the Trust.[51] Mr. Bakkes asserted that he was concerned Mr. Hapsis would not receive any money if NLA foreclosed on the Property. Because of Mr. Bakkes' alleged concern, Sky reached out to NLA in early 2018 about purchasing the Mortgage Debt, but NLA was not interested in selling the Mortgage Debt at that

---

[45] Doc. 178.
[46] Doc. 167.
[47] *Seawalk I*, 2021 WL 5016600, at *1.
[48] *Seawalk I*, 2021 WL 5016600, at *3.
[49] Doc. 185.
[50] *Seawalk I*, 2021 WL 5016600, at *4.
[51] *Id.*

time.[52] However, Sky approached NLA again after the bankruptcy was filed, and NLA agreed to sell the Mortgage Debt to Sky.[53] Sky did not seek an appraisal of the Property and did not inspect the Property prior to purchasing the Mortgage Debt.[54] Furthermore, Sky's purchase of the Mortgage Debt was for the full balance owed at that time with no discount given.[55] The undiscounted purchase price is telling and supports the proposition that Sky purchased the Mortgage Debt in an effort to acquire the Property.

The Court previously found that Mr. Bakkes' testimony was not credible[56] and that Sky's singular purpose in this bankruptcy case was to wrest the Property from Debtor.[57] Mr. Bakkes' testimony, which attempts to portray Sky as a "white knight" of sorts as to the Trust's position, belies Sky's actions, especially in the context of Sky's clear efforts to acquire the Property. Mr. Bakkes' failure to acknowledge the reality that Sky purchased the Mortgage Debt from NLA primarily to acquire the Property further calls into question his credibility.

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 3; Mr. Bakkes testified to the following during his August 5, 2020 deposition:
Q: "Is it fair to say that Sky purchased [Claim 5] for a hundred cents on the dollar?"
A: "I don't know the filing numbers or anything, sir. I know that we bought [Claim 5] for a price."
Q: "For full price, correct?"
A: "Yes."
Q: "Did you ask for a discount; did Sky ask for a discount?"
A: "Sure. When we bought the mortgage, we tried to negotiate a price and NLA was not prepared to consider anything below a hundred cents on the dollar." (Doc. 413-5, pp. 64-65).

[56] *Seawalk I*, 2021 WL 5016600, at *4.

[57] *Id.*, at *8.

VII.    <u>Post-Sky Note Acquisition Bankruptcy Litigation</u>

On March 13, 2020, Debtor filed a Motion to Require Mediation with Sky,[58]

and, on March 17, 2020, Debtor filed a Motion to Continue the matters scheduled for

trial on April 2, 2020 (the Motion for Final Approval of Disclosure Statement,

Confirmation of the First Amended Plan, and Debtor's § 1129(b) Motion as to Sky

(Sky having purchased NLA's Claim)).[59] Sky filed a consent to the continuance,[60] and

by order dated March 20, 2020, the Court continued trial on the scheduled matters to

July 16, 2020.[61] After a hearing held on April 30, 2020,[62] the Court entered an order

on May 4, 2020 requiring mediation between Debtor and Sky.[63] The mediation was

unsuccessful.

On May 12, 2020, Debtor filed a Second Amended Plan of Reorganization (the

"Second Amended Plan").[64] While the Second Amended Plan did not indicate the

monthly payment amount to be made to Sky, it provided for monthly payments to Sky

in an amount sufficient to pay $735,000.00, amortized over twenty years with a

balloon payment due on July 15, 2030.[65] The Second Amended Plan provided for a

---

[58] Doc. 190.
[59] Doc. 193.
[60] Doc. 198.
[61] Doc. 203.
[62] Doc. 210.
[63] Doc. 208.
[64] Doc. 212.
[65] *Id.*

3.46% interest rate if Sky did not vote to accept the Plan prior to June 2, 2020, and a 5% interest rate if Sky voted to accept the Plan on or before June 1, 2020.[66]

On July 7, 2020, Debtor filed a Motion to Strike the Motion to Convert on the basis that NLA no longer had a claim in the case, having transferred its claim to Sky.[67] By order dated July 9, 2020, the Court granted the Motion to Strike.[68] On that same day, Debtor filed a supplemental disclosure statement.[69]

On July 9, 2020, Sky sought a continuance of the July 16, 2020 hearings on the Motion for Final Approval of Disclosure Statement, Confirmation of the Second Amended Plan, and Debtor's § 1129(b) Motion as to Sky because of Sky's attorney's recent shoulder injury and resulting surgery, which entailed a lengthy recovery and rendered him unable to properly prepare for the hearings.[70] Although Debtor objected to a continuance,[71] by order dated July 13, 2020, the Court continued the hearing to August 7, 2020.[72]

On July 22, 2020, Sky filed its own Expedited Motion to Convert Case or in the Alternative Dismiss with Injunction ("Sky's Motion to Convert"),[73] which the Court scheduled for hearing on August 7, 2020. On July 24, 2020, Sky filed its own

---

[66] *Id.*
[67] Doc. 222.
[68] Doc. 224.
[69] Doc. 226.
[70] Doc. 227.
[71] Doc. 228.
[72] Doc. 230.
[73] Doc. 239.

Disclosure Statement and Plan of Reorganization ("Sky's Plan"),[74] which the Court

also scheduled for hearing on August 7, 2020.[75]

On August 5, 2020, Debtor filed a Third Amended Chapter 11 Plan of

Reorganization (the "Third Amended Plan").[76] The Third Amended Plan also

provided for monthly payments to Sky in an amount sufficient to pay $735,000.00,

amortized over twenty years, with a balloon payment due on July 15, 2030. However,

the Third Amended Plan changed the interest rate to 4.16% and added § 7.16, titled

Bar to Certain Actions by Creditors, which included the following injunctive language

(the "Plan Injunction"):

> With regard to any creditor which holds a claim that arose
> prior to the Petition Date and is dealt with under this Plan,
> so long as the Reorganized Debtor is not in a Material
> Default of the Plan relating to such creditor, no creditor
> having recourse against any-third party that is actively
> involved in the regular operations of the Reorganized
> Debtor's business may pursue such third-party on a claim
> or debt that is dealt with under this Plan. In the event of a[n]
> Material Default, such creditor may pursue such action
> after providing written notice [to] the Reorganized Debtor.

The Plan Injunction prohibited Sky from seeking to enforce its guaranty against Mr.

Stockton during the pendency of the Third Amended Plan unless Debtor was in

material default of the Third Amended Plan but did not attempt to discharge or release

---

[74] Docs. 243, 244

[75] By notices dated August 6, 2020, the August 7 hearings on Motion for Final Approval of Debtor's Disclosure Statement, Confirmation of the Second Amended Plan, the § 1129(b) motion as to Sky, and Sky's Emergency Motion to Convert Case were moved to August 26, 2020 (Docs. 287, 288) as a result of Debtor's counsel's exposure to COVID-19.

[76] Doc. 282.

Mr. Stockton's debt to Sky. The Third Amended Plan also added § 7.15, which provided that if Debtor defaulted on its plan payments, it had six months to list the Property, enter into a binding contract for the sale of the Property, and sell the Property.

On August 6, 2020, Sky filed an Expedited Motion for Entry of an Order Conditionally Approving Sky's Disclosure Statement and Scheduling a Plan Confirmation Hearing on Sky's Plan on August 26, 2020,[77] which the Court granted by order dated August 18, 2020 ("Order Approving Sky's Disclosure Statement and Scheduling Confirmation").[78] On August 24, 2020, Debtor filed an Emergency Motion for Reconsideration of the Order Approving Sky's Disclosure Statement and Scheduling Confirmation,[79] which the Court scheduled for hearing along with the other hearings on August 26, 2020.[80]

On August 24, 2020, Sky filed an objection to the Third Amended Plan, arguing that § 7.16 constituted an impermissible third-party release under § 524(e) of the Bankruptcy Code.[81] On that same day, Sky filed a brief in opposition to confirmation of the Third Amended Plan which stated: "Debtor may not discharge the liability of non-debtors. Debtor proposes to limit Sky's ability to enforce a guarantee against Mr. Stockton."[82] In its post-trial brief in opposition to confirmation, Sky objected to § 7.16,

---

[77] Doc. 290.
[78] Doc. 294.
[79] Doc. 304.
[80] Doc. 310.
[81] Doc. 299.
[82] Doc. 301.

14

referring to it as a third-party bar order. However, no version of Debtor's plan of reorganization ever proposed a full release as to a non-debtor, and Sky's filings to date have failed to recognize the Plan Injunction never included a full release of Mr. Stockton's guaranty liability.[83]

On September 11, 2020, the Court entered an Order Granting Final Approval of Debtor's Disclosure Statement.[84] On that same day, the Court entered an Order Granting Debtor's Emergency Motion for Reconsideration of the Order Approving Sky's Disclosure Statement and Scheduling Confirmation.[85]

On October 5, 2020, Sky filed a Rule 3012 Motion to Determine the Amount of Secured Claim by which it sought to have the following included in its secured claim: 1) attorney's fees of $172,722.99; 2) expert witness costs of $25,000.00; and 3) other costs of $7,369.50,[86] which the Court scheduled for preliminary hearing on November 16, 2020.[87] At that hearing, the Court scheduled a trial on the Motion to Determine the Amount of Secured Claim for January 28, 2021.[88] After multiple continuances, the trial was ultimately held on September 21, 2021.

---

[83] This type of plan injunction is very common in bankruptcy reorganizations, allowing debtors to reorganize, pay their secured creditors as proposed, and preserve guarantee obligations of non-debtors as long as the debtor is performing under a confirmed plan. That is exactly what Debtor proposed here. Sky's characterization of this proposed injunction as a release and corresponding challenges to confirmation based on such an argument lack merit.
[84] Doc. 336.
[85] Doc. 337.
[86] Doc. 350.
[87] Doc. 351.
[88] Docs. 369, 370.

On October 15, 2020, the Court held a trial on: 1) Sky's Motion to Convert; 2) Confirmation of the Third Amended Plan; and 3) the Amended § 1129(b) Motion as to Sky. The Court took the matters under advisement.[89]

On October 14, 2020, the Court held a hearing on the Motion for Approval of Sky's Disclosure Statement. On October 22, 2020, the Court entered an order approving Sky's disclosure statement and scheduled a confirmation hearing on Sky's plan of reorganization for January 14, 2021,[90] which was later continued to January 28, 2021,[91] and then again continued to February 18, 2021.[92] At the February 18, 2021 hearing the Court took the confirmation of the Third Amended Plan under advisement. The parties filed voluminous briefs as to all the matters under advisement, and briefing was concluded on June 28, 2021.[93]

On January 21, 2021, Mr. Stockton filed a Motion for Third Party Injunction, or, in the Alternative, for an Order Staying Litigation Against [Mr. Stockton].[94] Mr. Stockton sought to enjoin Sky from prosecuting a pending state court action to enforce his personal guaranty of the Mortgage Debt until the Court ruled on the matters under advisement. After a hearing on the Motion on February 3, 2021, the Court entered an

---

[89] Doc. 359.
[90] Doc. 362.
[91] Doc. 401.
[92] Doc. 420.
[93] Docs. 474, 475, 476, 477, 478, 479, 480, 483.
[94] Doc. 404.

order granting the Motion on February 16, 2021, thus staying the pending state court action until further order of the Court.[95]

On August 20, 2021, Sky filed its First Supplement to its Motion to Dismiss, or alternatively, Motion to Compel Debtor to File its Monthly Operating Reports for April, May, and June 2021.[96] On August 27, 2021, the Court entered an Order Granting the Motion to Compel and ordering the Debtor to file the outstanding Monthly Operating Reports by September 10, 2021.[97]

VIII.   Sky's Claim for Attorney's Fees

On August 25, 2021, Sky filed a First Supplement to its Rule 3012 Motion to Determine the Amount of its Secured Claim.[98] Sky now sought: 1) $294,383.39 for its attorney's fees, comprised of $72,858.59 for attorney David Lienhart of the Lienhart Law Firm, and $221,524.80 for the Ferrelle Burns Law Firm, represented by David Burns and Ashley Dodd; 2) $25,000.00 for expert witness fees; and 3) $12,005.70 for other costs.[99] These attorneys' respective hourly billable rates were $275.00, $350.00, and $245.00.

Sky submitted into evidence Leinhart Law Firm, P.A. ("LLF") invoices covering the period from March 21, 2019 to December 15, 2020 (the "LLF

---

[95] Doc. 428.
[96] Doc. 486.
[97] Doc. 488.
[98] Doc. 487.
[99] Sky's Ex. 6a, September 21, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim.

Invoices")[100] and Ferrelle Burns, P.A. ("FB") invoices covering the period from February 4, 2020 to July 8, 2021 (the "FB Invoices").[101]

The LLF Invoices total $67,753.00 in attorney's fees and $1,918.14 in costs and are broken down as follows:

- March 21, 2019 to April 30, 2019 with fees of $9,927.50 and costs of $289.90;

- April 25, 2019 to June 28, 2019 with fees of $9,653.75 and costs of $214.88;

- July 1, 2019 to August 30, 2019 with fees of $17,288.75 and costs of $1,184.73;

- September 1, 2019 to December 18, 2019 with fees of $17,791.00 and costs of $169.88;

- February 4, 2020 to August 25, 2020 with fees of $10,000.00 and costs of $58.75; and

- August 26, 2020 to December 15, 2020 with fees of $3,092.00.[102]

The FB Invoices total $218,967.50 in attorney's fees and $5,598.23 in costs and are broken down as follows:

- February 4, 2020 to March 27, 2020 with fees of $16,808.00 and costs of $148.40;

- April 1, 2020 to August 28, 2020 with fees of $94,661.00 and costs of $813.63

---

[100] Sky's Exs. 7, 10, September 21, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim.
[101] Sky's Exs. 7, 9, September 21, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim.
[102] Sky's Exs. 7, 10, September 21, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim.

- September 1, 2020 to December 31, 2020 with fees of $35,094.50 and costs of $1,069.90;

- January 4, 2021 to March 25, 2021 with fees of $34,068.50 and costs of $3,528.00; and

- April 2, 2021 to July 8, 2021 with fees of $38,335.50 and costs of $38.30.[103]

Bradley Markey, a bankruptcy attorney since 2002, testified as Sky's expert witness in support of Sky's claim for attorney's fees. Of the approximate $286,000.00 in attorney's fees Mr. Markey believed were sought by Sky,[104] he designated $213,000.00 for general bankruptcy work and $73,000.00 for Sky to protect its position. Mr. Markey attributed $36,000.00 of the $73,000.00 to Sky's preparation of its own plan of reorganization and disclosure statement.

Mr. Markey opined that Sky was entitled to attorney's fees of $250,000.00.[105] Mr. Markey thought there was some duplication of effort between the attorneys and excessive discovery, so he reduced for that duplication. Mr. Markey acknowledged that he had not studied the Third Amended Plan in terms of payout to creditors and that Sky did not ask him to consider its interest in acquiring Debtor's property as part of his opinion.[106]

---

[103] Sky's Exs. 7, 9, September 21, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim.
[104] As the Court noted, Sky sought attorney's fees of $294,383.39.
[105] September 21, 2021 hearing on Motion to Determine Amount of [Sky]'s Secured Claim, Tr. at pp. 33-34.
[106] *Id.* at pp. 36-37.

IX.   *Seawalk I*

On October 28, 2021, the Court entered the following: 1) Findings of Fact and Conclusions of Law;[107] 2) an Order Valuing the Property at $4.75 million;[108] 3) an Order Valuing Sky's Secured Claim at approximately $811,000.00, finding the principal balance owed was approximately $742,000.00, accrued interest was approximately $19,000.00, and allowed attorney's fees were $50,000.00;[109] and 4) an Order Denying Sky's Motion to Convert or Dismiss the Case.[110] The Court made the following findings: 1) Sky's Plan was a liquidation plan, which proposed to effectively purchase the Property for $1.75 million;[111] 2) Sky's Plan provided for the payment of all debts in full upon confirmation and a transfer of all Debtor's assets to Sky, with Debtor's equity holders receiving nothing; 3) Sky's Plan was not proposed in good faith but was instead proposed for the purpose of obtaining title to the Property; and 4) Sky's Plan did not satisfy the best interest of creditors test as set forth in § 1129(a)(7) because Debtor's creditors would receive more in a Chapter 7 liquidation than under Sky's Plan.[112] The Court rejected Sky's argument that the Third Amended Plan's treatment unfairly discriminated against Sky vis a vis the Trust and found that the

---

[107] *Seawalk I*, 2021 WL 5016600, at *1.

[108] Doc. 532.

[109] Doc. 533.

[110] Doc. 534.

[111] Notably this $1.75 million proposed purchase price is far less than the value of the Property. This is another sign Sky was focused on acquiring the Property rather than protecting and enforcing its rights under the Note.

[112] *Seawalk I*, 2021 WL 5016600, at *6-10.

Third Amended Plan was both fair and equitable as to Sky and feasible.[113] Finally, the Court found that the Plan Injunction satisfied the *Dow Corning*[114] factors and was essential to the reorganization.[115] The Court found that the Third Amended Plan met all of the requirements for confirmation and directed Debtor to submit an order confirming the Third Amended Plan,[116] which the Court entered on November 5, 2021.[117]

In awarding Sky only $50,000.00 of the $294,383.39 in fees it sought to have included in its secured claim, the Court reasoned:

> The Court finds for the following reasons that the fees incurred by Sky in this case are entirely disproportionate to its risk and would not have been incurred by a typical creditor in Sky's position. Most importantly, NLA Jacksonville, and subsequently Sky, was at all times oversecured and had a very significant equity cushion. Simply put, while there was a risk of default, there was no risk of loss to Sky because of the value of the Property. The Debtor was not in default when the case was filed. The Debtor did not challenge NLA's lien position. The Debtor had filed a plan of reorganization that called for full payment with interest to NLA, and cash collateral issues were resolved, before Sky purchased the Primary Mortgage Debt. The Court finds that Sky's singular purpose in this bankruptcy case was to wrest the Property from the Debtor, not to protect its lien. The Court finds that a similarly

---

[113] *Id.*, at *10-13.
[114] At the time of the entry of *Seawalk I*, the Court was bound to follow *Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070 (11th Cir. 2015), which had adopted the test set forth in *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002).
[115] *Id.*, at *12.
[116] *Id.*, at *13.
[117] Doc. 538.

situated creditor would have incurred no more than $50,000.00 in attorney's fees to protect its position.[118]

X.    Appeal of *Seawalk I*

On November 12, 2021, Sky filed Notices of Appeal as to the Findings of Fact and Conclusions of Law,[119] the Order Valuing the Property,[120] the Order Valuing Sky's Secured Claim,[121] and the Order Confirming the Third Amended Plan.[122] On August 29, 2023, the United States District Court (the "District Court") entered an Order affirming the Court's Findings of Fact and Conclusions of Law and corresponding orders on all issues except the Court's determination of attorney's fees (the "District Court Order").[123] The District Court remanded on that issue because the Court failed to discuss what a reasonable number of hours would be, and the District Court was therefore unable to determine how the Court calculated the fees.[124] The District Court noted that it did not prejudge what a reasonable fee would be and did not exclude the possibility that the $50,000.00 fee award was appropriate.[125] However, the District Court noted that this Court must explicitly show that it conducted the lodestar or some other appropriate analysis in arriving at a reasonable fee.[126]

---

[118] Id., at *8.
[119] Doc. 540.
[120] Doc. 541.
[121] Doc. 542.
[122] Doc. 543.
[123] *Sky Enters., LLC v. Seawalk Invs., LLC*, Case No. 3:21-cv-1148-TJC, Doc. 28.
[124] *Id.*
[125] *Id.*
[126] *Id.*

On September 25, 2023, Sky filed a notice of appeal of the District Court Order to the Eleventh Circuit Court of Appeals. On April 23, 2024, the Eleventh Circuit dismissed the appeal for lack of jurisdiction, finding that the District Court Order did not end the litigation on the merits.

XI.    Briefing Order

On May 6, 2024, the Court entered an Order Directing Meet and Confer Conference and Briefing on Attorney's Fees Allowed as Part of [Sky's] Secured Claim (the "Briefing Order").[127] The Briefing Order required the parties to file detailed briefs to enable the Court to determine the reasonableness of Sky's requested fees. Specifically, the Briefing Order directed Sky to: 1) file billing statements for the requested fees which itemize time by project categories that Sky believed were critical to protecting and preserving its lien on the Property or enforcing its rights under the Note; 2) include activity descriptions of all of the work completed with no combined activity descriptions or time allotments; 3) file an initial accompanying brief which provided information by project category as to the types of services performed, the necessity for performing the services, the results obtained, and the benefit to the bankruptcy estate; and 4) provide reasons for substantial time billed relating to a specific activity as well as provide factual and legal support to satisfy the reasonableness requirement of § 506(b).[128]

---

[127] Doc. 692.
[128] *Id.*

23

The Briefing Order directed Debtor to file an answer brief to Sky's initial brief detailing why Debtor asserted specific billings and specific activities failed to satisfy the reasonableness requirement of § 506(b), along with corresponding factual and legal support. The Briefing Order required the parties to file a joint stipulation of all key facts they agreed to and all key disputed facts. Finally, the Briefing Order required that the parties include a memorandum of fact and law citing all portions of the record and all legal authority upon which they relied to support their respective positions as to the allowance of the fees.[129]

XII.    Sky's Brief and Attached Fee Summaries

On August 15, 2024, Sky filed its Brief in Support of Including Attorney's Fees in its Secured Claim[130] to which it attached summaries of the LLF Invoices (the "LLF Fee Summary")[131] and the FB Invoices (the "FB Fee Summary").[132]

A.    LLF Fee Summary

The LLF Fee Summary breaks down the LLF Invoices into the following categories:

1.    Initial Analysis and assessment of Debtor, affiliated companies occupying premises, fire, and current operation, appraisal, prior BK. Cash Collateral and Insurance Proceeds and 341 hearing for total fees of $22,112.50

2.    Guarantor Enforcement for total fees of $962.50

---

[129] *Id.*
[130] Doc. 701.
[131] Doc. 701, Ex. 2.
[132] Doc. 701, Ex. 1

3.     Discovery for total fees of $5,718.75

4.     Motions to Compel Discovery for total fees of $2,365.00

5.     General Case Administration for total fees of $11,759.00

6.     Debtor's Plan of Reorganization for total fees of $8,580.00

7.     Confirmation Hearings for total fees of $962.50

8.     Settlement (Including Mediation) for total fees of $2,282.50

The LLF Fee Summary does not include the LLF Invoices for the periods from February 4, 2020 to August 25, 2020 and from August 26, 2020 to December 15, 2020.

B.     FB Fee Summary

The FB Fee Summary breaks down the FB Invoices into the following categories:

1.     General Case Administration for total fees of $56,883.00

2.     Discovery for total fees of $51,827.00, which includes a sub-category of Motions to Compel representing fees of $1,827.00

3.     Attendance and Preparation for Hearings and Trials (Other than Confirmation) for total fees of $8,354.50

4.     Confirmation Hearings for total fees of $86,056.50

5.     Debtor's Plan and Disclosure Statement for total fees of $8,087.50

6.     Sky's Plan and Disclosure Statement for total fees of $10,587.50

7.      Mediation/Settlement for total fees of $6,168.00

XIII.   Value of the Property

From the inception of the case on March 21, 2019 until the entry of the October 28, 2021 Order Valuing the Property at $4.75 million, NLA and subsequently Sky were at all times oversecured and could not have reasonably believed otherwise. Even Sky's own expert valued the Property at $2.6 million, well in excess of Sky's secured claim. Sky also filed Claim 5 acknowledging it was fully secured, under penalty of perjury.

## Conclusions of Law

I.      Allowance of Attorney's Fees

A proof of claim in a bankruptcy case is deemed allowed unless a party in interest objects. If a party in interest objects, the Court must determine the amount of the claim and allow such claim except to the extent an exception set forth in § 502(b) applies. Section 502(b)(1) disallows a claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…"[133]

In analyzing whether attorney's fees claimed by an oversecured creditor, such as Sky, are allowed as part of its claim, a court must first determine whether the claim is allowed under § 502 and, if so, whether the fees claimed are reasonable pursuant to § 506.[134] Once a claim is allowed, § 506 "deals with the entirely different, more narrow

---

[133] 11 U.S.C. § 502.
[134] *In re Reorganized Lake Diamond, Assocs., LLC,* 367 B.R. 858, 865 (Bankr. M.D. Fla. 2007) (citing *In re Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308 (11th Cir. 2007)).

question of whether certain types of claims should be considered secured or unsecured."[135]

"Reasonable fees are those necessary to the collection and protection of a creditor's claim and include fees for those actions which a similarly situated creditor might have taken. The fees must be cost justified by the economics of the situation and necessary to preserve the creditor's interest in light of the legal issues involved. A secured creditor is not entitled to compensation for its attorney's fees for every action it takes by claiming that its rights have been [a]ffected."[136]

An oversecured creditor's attorney's fees may be treated as part of its secured claim if the fees are reasonable and the agreement between the creditor and the debtor gives rise to the claim.[137] "The Congressional intent behind the enactment of § 506(b) was to ensure that oversecured creditors do not lose their reasonable claims for attorney's fees simply due to the fact that their collateral is worth more than the underlying claim-rather than [to serve] as a blank check for oversecureds to accrue legal fees beyond the scope of protecting their interests. Just because a creditor

---

[135] *In re Welzel*, 275 F.2d at 1318.

[136] *In re Digital Products Corp.*, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997).

[137] *See* 11 U.S.C. § 506 providing in pertinent part that:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

authorizes legal work does not mean that a debtor should pay for it."[138] "A secured creditor can recover only attorney's fees which are incurred to achieve the 'objective of payment' or 'reasonably necessary to enforce [a] debtor's obligations to collect the amount remaining due pursuant to those obligations.'"[139] Furthermore, the claimant, in this case Sky, has the burden of establishing that its fees are allowable under § 506(b), including establishing that its fees are reasonable in the context of its position in the case.[140]

A.    *Lake Diamond*

The Court must first determine whether the attorney's fees which Sky seeks as part of its claim are enforceable under the Note and therefore allowed under § 502. The Court previously dealt with this issue in *In re Reorganized Lake Diamond Associates*.[141] In *Lake Diamond*, the Chapter 11 debtor had previously borrowed money from a bank to purchase a golf course community, which secured the bank's claim. Approximately eight months after the debtor filed the bankruptcy petition, Silver Capital ("Silver") purchased the bank's claim for approximately $7 million. As part of its plan of reorganization, the debtor agreed to sell the property for $8.7 million, which exceeded Silver's acquired claim by approximately $2 million. The debtor filed a

---

[138] *Seawalk I*, 2021 WL 5016600, at *7 (internal citations and quotations omitted).
[139] *In re Canal Asphalt, Inc.*, 2017 WL 1956849, at * 7 (Bankr. S.D.N.Y. May 10, 2017) (internal citations omitted).
[140] *Id.*; *In re Pan Am. Gen. Hosp., LLC* 385 B.R. 855, 869 (Bankr. W.D. Tex. 2008) (secured creditor bears burden of proving reasonableness of its fees); *In re 900 Corp.*, 327 B.R. 585, 595 (Bankr. N.D. Tex. 2005).
[141] *In re Reorganized Lake Diamond Assocs.*, 367 B.R. at 858.

motion seeking an order approving procedures by which it would solicit higher and better offers for the purchase of the property and conduct an auction thereof.

Silver, in order to purportedly protect its interest, served discovery upon the debtor and the prospective purchaser of the property. The discovery sought to ascertain the identity of the purchaser's principals and the purchaser's ability to close on the purchase. Silver sought a continuance of the bid procedures hearing until it could conduct the purchaser's deposition, which the Court denied. At the bid procedures hearing, Silver objected to the proposed break-up fee and offered to purchase the property for $8,850,000.00, which the debtor rejected. The buyer ultimately agreed to a reduction in the break-up fee, and the Court approved the bid procedures. A deposition of Silver's corporate designee revealed that Silver purchased the bank's claim for the purpose of acquiring the property and was not concerned with its ability to be paid in full, i.e., it would not have purchased the bank's claim if did not believe the property would yield as much as the secured debt.

The Court conducted the auction, which included bidding by Silver and other interested prospective purchasers, with the original prospective purchaser submitting the highest bid of $12,900,000.00, almost twice the amount owed to Silver. After the sale of the property closed, Silver received full payment on its filed secured claim.

Fourteen months later, Silver filed a motion seeking payment from the debtor of its approximate $147,000.00 of attorney's fees which it alleged were incurred in collecting or enforcing payment. Silver had filed three pleadings in the case, two of which were joinders to other pleadings, and appeared before the Court at the bid

29

procedures hearing, the auction, and the confirmation hearing, at which it did not participate. The debtor objected to the fees, arguing that: 1) Silver was interested only in purchasing the property, not in holding the debt; and 2) payment of the debt was never at risk.

The Court noted that it viewed §§ 502 and 506 in conjunction with one another "to disallow those fees under § 502 which would not be allowed by a Florida state court applying nonbankruptcy law, and to allow fees incurred by Silver in its sincere attempts at protecting its interest in the [p]roperty, which are within the scope of the Loan Documents."[142] The Court further noted that while the mortgage at issue defined attorney's fees broadly, it also included the qualifying term "reasonable," and that in determining what "reasonable" encompassed under the loan documents, Florida law (the applicable law under the loan documents) "dictates that such fees are typically those incurred by a secured creditor in protecting its debt."[143] The Court stated:

> Thus, if a Florida state court were to award attorneys' fees pursuant to the Loan Documents, considering that the documents use language customary within the lending industry, the totality of the circumstances of the case suggest that a Florida state court would disallow much of Silver's claimed fees pursuant to state law. As a result, the Court finds that it is not equitable for Silver's counsel to be rewarded for the actions they took with respect to the Chapter 11 Case. Given the legal issues involved, the fees incurred by Silver are not cost justified by the economics of the situation, and must be disallowed under § 502(b)(1).[144]

---

[142] *Id.* at 867.

[143] *Id.*

[144] *Id.* at 868.

The Court found that Silver's participation in the case stonewalled rather than facilitated the debtor's reorganization, that Silver acquired the secured debt to best position itself to purchase the property, and that it did so with no downside.[145]

The Court disallowed the fees incurred by Silver: 1) in acquiring the bank's claim; 2) in attempting to purchase the property; and 3) as a result of overzealousness and a lack of restraint. Of the 506.65 hours expended by the three law firms Silver retained, the Court disallowed 474.95 hours. Turning to § 506, the Court found that only 31.7 hours were reasonable and should be allowed as part of Silver's secured claim.

Other cases dealing with claims for attorney's fees and costs from oversecured creditors focus on the core issue of whether the fees and costs were reasonably necessary to the collection and protection of a creditor's claim and analyze reasonableness only under § 506 without discussing or addressing § 502.[146] The analysis, under both the Note terms and applicable law, is whether the fees are reasonable and

---

[145] *Id.* at 871.

[146] *In re Sirios*, Case No. 20-16709 (Bankr. Co. Jan. 5, 2024) (disallowing $92,434.50 of the $157,347.00 in fees sought by oversecured creditor on the basis that they were unreasonable pursuant to Colorado law and § 506); *In re Heritage Hotel Assocs., LLC*, 2021 WL 2646533 (Bankr. M.D. Fla. June 28, 2021) (disallowing $85,175.90 of the $134,707.50 in fees sought by oversecured creditor on the basis that they were unreasonable pursuant to § 506 because the creditor's actions were overzealous, were not taken to protect its secured claim, were not cost justified, and were not those that a similarly situated creditor would have taken); *In re A & B Assocs., L.P.*, 2019 WL 1470892, at *41 (Bankr. S.D. Ga. Mar. 29, 2019) (disallowing $265,770.65 of $965,770.65 in fees sought by oversecured creditor with substantial equity cushion on basis that they were unreasonable pursuant to § 506 because creditor's actions were disproportionate to its risk, and the fees would not have been incurred by a typical creditor in the same position).

should be included in Sky's claim. If found not to be reasonable, then Debtor is not responsible for such fees and costs.

### B.   Lodestar Method

In determining reasonable attorney's fees, Florida applies the federal lodestar method.[147] The lodestar is the product of the number of hours reasonably expended and a reasonable hourly rate.[148] "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[149] Although the lodestar is strongly presumed to result in a reasonable fee, the court must then look to the factors set forth in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714 (5th Cir. 1974) to determine whether to reduce or enhance the lodestar.[150]

In *Caplan*, the Eleventh Circuit stated:

> Although "there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve," we have instructed that, in determining whether the lodestar amount is reasonable, "the [district] court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express* []."  Those twelve factors are:
>
>> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

---

[147] *In re 218 Jackson, LLC*, 646 B.R. 533, 538 (Bankr. M.D. Fla. 2022).

[148] *In re Caplan v. All American Auto Collision, Inc.*, 36 F.4th 1083, 1090 (11th Cir. 2022).

[149] *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

[150] *In re Caplan*, 36 F.4th at 1089.

"undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Along with these factors, and in calculating the lodestar amount, a district court should "exclude ... hours that were not 'reasonably expended.'" Courts are considered experts on the reasonableness of the number of hours expended and the hourly rates requested. Indeed, a district court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[151]

II.    Analysis

As noted, Sky has the burden of proof to establish the fees and costs it incurred were necessary to the collection and protection of its claim, and the claim includes only fees for those actions which a similarly situated creditor might have taken. Quite simply, Sky has failed to meet its burden of proof in this case. Furthermore, removing any burden of proof from the analysis, Sky's actions in attempting to obtain ownership of the Property are so intertwined with what would have been reasonable actions, it is virtually impossible to separate out what was reasonable and what was not. Even when given further opportunity to brief the matter after the District Court Order, Sky continued to lump fees together and failed to demonstrate the reasonableness of its actions as compared to its rights under the Note and applicable law.

Additionally, the time entries in the FB Fee Summary[152] are not set forth in chronological order, and most time entries fail to support any basis to be awarded as

---

[151] *Id.* at 1089-1091 (citations omitted).
[152] Doc. 701, Ex. 1.

reasonable. Sky's effort to sort time entries into larger categories is lacking in places. For example, the general case administration category is filled with discovery, guaranty enforcement, and plan related matters. Additionally, there appears to be duplication of work between Sky's two law firms that would warrant reduction of amounts sought. All of this makes it extremely difficult for the Court to determine what is reasonable. Thus, the Court is tasked with trying to decipher hundreds of billing entries for what should be allowed. Having now thoroughly reviewed Sky's billing statements and studied the record in the case numerous times, the Court finds its original $50,000.00 attorney's fees award to Sky to have been reasonable but adjusts that award slightly down based on the analysis below.

The Court also notes that while Mr. Markey is a well-respected, experienced bankruptcy lawyer, in this bankruptcy case, he was paid to provide focused testimony to support the reasonableness of Sky's and NLA's fees and costs. While Mr. Markey's testimony is credible as to a reasonable fee for Sky's intended actions to acquire the Property, there are missing pieces in his opinion for what was actually necessary to the collection and protection of Sky's claim. Notably, Sky's specific actions were not part of his opinion. For example, Mr. Markey did not testify as to the legal standards set forth in *Lake Diamond* and its progeny as to fee entitlement for oversecured creditors and how that body of law would impact his opinion. Furthermore, Mr. Markey did not distinguish between a reasonable fee for a creditor acquiring a clearly oversecured loan to try to leverage the purchase into owning the property versus what was in fact necessary to the collection and protection of Sky's claim. Mr. Markey also

acknowledged that Sky did not ask him to consider its interest in acquiring the Property as part of his opinion, and he had not studied the Third Amended Plan in terms of payout to creditors. These are major factors in considering what was in fact necessary as to the collection and protection of Sky's purchased, oversecured claim.

It is also worth comparing the Trust's activities in the case to those of Sky. The Trust, which was in an inferior lien position to Sky, filed its original Claim 4 in the amount of $390,271.08. The Trust and Debtor successfully mediated the Trust's claim treatment on or about October 30, 2019, whereby the Trust was allowed a claim in the amount of $425,000.00, an amount approximately $35,000.00 above its original claim amount. This additional amount, assuming it primarily represents attorney's fees and costs, accounts for less than 10% of the Trust's original claim. Additionally, the settlement was accomplished months prior to Sky acquiring NLA's claim.

NLA, on the other hand, filed its superior lien position claim in the amount of $750,967.07 and sold that claim to Sky for $760,000.00. Sky then took an aggressive litigation approach and seeks almost $295,000.00 in fees and costs. This fee request is almost 40% of the original claim amount and is from a lender that was never at any real risk of non-payment. There is a compelling argument that Sky's fees and costs should have been less than the Trust's fees and costs.

At the time of the Trust's October 30, 2019 settlement, there were 157 docket entries in this bankruptcy case, and the case had been pending for just over 7 months. When Sky acquired NLA's claim on February 3, 2020, approximately three months after the Trust's and Debtor's settlement, the bankruptcy case had 184 docket entries

and had been pending just under 11 months. As this opinion is written, there are over 700 docket entries with the following benchmarks:

Docket entries 184 to 375 from February 3, 2020 to December 31, 2020

Docket entries 376 to 580 from January 1, 2021 to December 31, 2021

Docket entries 581 to 675 from January 1, 2022 to December 31, 2022

While many of these entries are not directly related to Sky's discovery and litigation activities, that is nonetheless a lot of activity for a small single asset real estate case[153] involving a clearly oversecured creditor.

The record is clear that the vast majority of Sky's actions were intended to try to take ownership of the Property and not to simply collect and protect its interest as was originally contracted for in the Note. As a result, the Court must consider actions a similarly situated creditor might have taken and how the equation changes when a party acquires a loan for the purpose of trying to take control of collateral, in this case the Property. In doing so, the Court looks to its own expertise to round out the analysis of the attorney's fees and costs Sky should be entitled to recover.[154]

---

[153] Doc. 38, Order Determining Case is a Single Asset Real Estate Case.

[154] "The court is itself an expert on the question [of reasonable attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to the reasonableness of the fee request." *In re Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 802 (11th Cir. 2014) (citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d at 1303); *See also In re Caplan*, 36 F.4th at 1090 (affirming District Court's reduction of requested attorney's fees that were "grossly disproportionate to the context and circumstances of th[e] case"); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940); *and In re 218 Jackson LLC*, 646 B.R. at 538.

A.   Specific Bases to Deny Sky's Fees and Costs – Lienhart Law Firm,
P.A.

The LLF Invoices range from March 21, 2019 to December 15, 2020 and total

$67,753.00.[155] The LLF Fee Summary covers eight categories of billing with entries

from March 21, 2019 to December 18, 2019 totaling $54,742.75. There are extensive

redactions to the LLF Invoices and the LLF Fee Summary that make it difficult to

determine reasonableness, and Sky's briefing does not address LLF's redactions.

Further, there are several entries related to enforcing a guaranty, but also questions as

to whether the loan was in default. Regardless, Sky's briefing and the corresponding

record do not support awarding fees for aggressively enforcing the guaranty here.

Rather, such guaranty enforcement appears to be part of the efforts to put pressure on

Debtor and Mr. Stockton. The Court does find that the hourly rate of $275.00 for

David Lienhart is reasonable. Upon review, however, the Court finds that an

experienced bankruptcy attorney representing a similarly oversecured creditor that

was not trying to acquire Debtor's Property would have incurred far less fees during

the respective time periods, as set forth below, in this bankruptcy case. The Court turns

to the hours reasonably expended with the analysis focused on the LLF Invoices.

---

[155] Sky's Exs. 7, 10 from September 21, 2021 hearing on Motion to Determine Amount of
[Sky]'s Secured Claim. This number differs from $72,858.59, the amount set forth in Sky's
Claim Calculation Worksheet admitted as Exhibit 6a at the September 21, 2021 hearing, but
the Court will base its analysis and award on the actual invoices submitted into evidence at
the hearing.

1.   <u>LLF's Invoice for March 21, 2019 to April 30, 2019</u>

LLF's invoice for the period of March 21, 2019 to April 30, 2019 in the amount of $10,217.40 with $9,927.50 for fees and $289.90 for costs notes certain actions that fall outside of what a similarly situated creditor might have taken. One questionable area of billing here is the extensive amount of fees NLA incurred in connection with the fight over insurance proceeds and Debtor's proposed use of cash collateral. Sky has failed to provide adequate bases for purposes of fee allowance as to why NLA was so aggressive in pursuing these matters. As a vastly oversecured creditor, there was virtually no reason for NLA to take any exception with Debtor's use of cash collateral. Furthermore, certain entries such as those for conducting due diligence on a new tenant, permit applications, inspection, and Airbnb do not appear to be necessary to the collection and protection of Sky's claim.

An experienced bankruptcy lawyer representing a similarly situated wholly oversecured creditor would have incurred less fees during this time period in the bankruptcy case. That said, there was rightful work done by LLF to familiarize itself with the case, such as review of the filings in this case and Debtor's prior bankruptcy case. Based on the foregoing, the Court finds $3,300.00 (12 hours) to be a reasonable amount of fees for LLF's first Invoice for the period of March 21, 2019 to April 30, 2019. Furthermore, $39.90 of costs in the first Invoice appear reasonable. There is not sufficient evidence in the record to support the $250.00 title search/foreclosure commitment update charge in this Invoice.

2.  LLF's Invoice for April 25, 2019[157] to June 28, 2019

LLF's Invoice for the period of April 25, 2019 to June 28, 2019 in the amount of $9,868.63 with $9,653.75 for fees and $214.88 for costs contains charges for actions that largely fall outside of those a similarly situated creditor might have taken. In addition to reasons noted to disallow fees from LLF's prior Invoice, the billing here includes continued efforts focused on insurance proceeds, amounts for unnecessary discovery, and a litigation plan. Again, Sky fails to provide an adequate basis for purposes of fee allowance as to why it and its predecessor NLA were so aggressive in pursuing these matters.

An experienced bankruptcy lawyer representing a similarly situated wholly oversecured creditor that was not trying to acquire the Property would have incurred far less fees during this time period in the bankruptcy case. Based on the foregoing, the Court finds $2,750.00 (10 hours) to be a reasonable amount of fees for LLF's second Invoice for the period of April 25, 2019 to June 28, 2019. Furthermore, the $214.88 of costs in the second LLF Invoice appear reasonable.

3.  LLF's Invoice for July 1, 2019 to August 30, 2019

LLF's Invoice for the period of July 1, 2019 to August 30, 2019 in the amount of $18,413.48 with $17,228.75 for fees and $1,184.73 for costs represents fees for actions that largely fall outside of those a similarly situated creditor might have taken. In addition to reasons noted to disallow fees from LLF's prior Invoices, the billing here

---

[157] It is unclear to the Court why LLF's second Invoice includes a charge for April 25, 2019, a date that should have been included in the first Invoice.

includes continued efforts focused on amounts for unnecessary discovery. Again, Sky fails to provide an adequate basis for purposes of fee allowance as to why Sky and its predecessor NLA were so aggressive in pursuing these matters and, specifically for this third Invoice, why such extensive discovery was needed. The charges related to Mr. Stockton's 2004 examination appear very excessive. The charge of $2,392.50 on August 19, 2019 representing 8.42 hours of time for planning and preparation and another $962.50 representing 3.30 hours for conducting the 2004 examination in a case that arguably should not have had any discovery should not be allowed. Even if there was a small need for such an examination, the fees and costs that would have been incurred in doing so by an experienced bankruptcy lawyer should have been a fraction of what NLA actually incurred.

Based on the foregoing, the Court finds $3,300.00 (12 hours) to be a reasonable amount of fees for LLF's third Invoice for the period of July 1, 2019 to August 30, 2019. Furthermore, $225.75 of costs appear reasonable. This represents allowing the costs in this Invoice except for the $225.00 of subpoena charges and two-thirds of the $150.80 for 2004 examination exhibits and $373.14 (half was noted as being reimbursed by the Trust).

### 4. LLF's Invoice for September 1, 2019 to December 18, 2019

LLF's Invoice for the period of September 1, 2019 to December 18, 2019 in the amount of $17,960.88 with $17,791.00 for fees and $169.88 for costs (after a discount) again represent fees for actions that fall largely outside of actions a similarly situated creditor might have taken. In addition to reasons noted to disallow fees from LLF's

prior Invoices, the billing here includes amounts for unnecessary discovery, appointment of a trustee or examiner, and dismissal or conversion of the bankruptcy case.

The driving force behind the above actions was clearly Sky's attempts to acquire the Property, and the allowance of fees and costs for these actions is not supported by the record in this bankruptcy case. Based on the foregoing, the Court finds $2,750.00 (10 hours) to be a reasonable amount of fees for LLF's fourth Invoice for the period of September 1, 2019 to December 18, 2019. Furthermore, $138.45 of costs in the fourth Invoice appear reasonable. This represents allowing the costs except those related to document production and Sky's Motion to Dismiss.

5.      LLF's Invoice for February 4, 2020 to August 25, 2020

LLF's Invoice for the period of February 4, 2020 to August 25, 2020 in the amount of $10,058.75 with $10,000.00 for fees and $58.75 for costs (after a discount) again represents fees for actions that fall largely outside of actions a similarly situated creditor might have taken. In addition to reasons noted to disallow fees from LLF's prior Invoices, the billing here includes transactional costs for the loan that should not be borne by Debtor, continued efforts focused on amounts for unnecessary discovery, appointment of a trustee or examiner, and dismissal or conversion of the bankruptcy case.

The Court finds that the majority of actions Sky chose to pursue during this time period were not reasonable and would not have been taken but for its interest in trying to acquire the Property. Based on the foregoing, the Court finds $1,925.00 (7 hours) to

be a reasonable amount of fees for LLF's fifth Invoice for the period of February 4, 2020 to August 25, 2020. Furthermore, none of the costs in the fifth LLF Invoice appear reasonable.

### 6. LLF's Invoices for August 26, 2020 to December 15, 2020

LLF's Invoices for August 26, 2020 to December 15, 2020 in the collective amount of amount of $3,092.00 again represent fees for actions that fall largely outside of actions a similarly situated creditor might have taken. In addition to reasons noted to disallow fees from LLF's prior Invoices, the billing here includes entries that appear duplicative.

Simply stated, it was not necessary for both LLF and FB to attend the confirmation trial and to challenge confirmation of Debtor's plan. Based on the foregoing, the Court finds $500.00 to be a reasonable amount of fees for LLF's Invoices for the period of August 26, 2020 to December 15, 2020.

In total, the Court finds that Sky is entitled to recover $14,525.00 (approximately 53 hours at a $275.00 hourly rate)[158] in fees and $618.98 in costs under the LLF Invoices from Debtor as reasonable and part of its secured claim in this bankruptcy case.

---

[158] The Court notes that 53 hours of attorney time is on the higher end of what would have been reasonably required to protect Sky's interest in this bankruptcy case for the work by LLF.

### 7. LLF's Fee Summary

As noted, the LLF Fee Summary covers eight categories of billing with entries from March 21, 2019 to December 18, 2019 totaling $54,742.75. The LLF Fee Summary includes numerous redactions, and there is no explanation of the $9,950.25 difference between the LLF Invoices totaling $67,753.00 and the $54,742.75 in the LLF Fee Summary. Comparing the LLF Fee Summary to the LLF Invoices discussed in detail above does not alter the Court's view on the reasonable amount of fees that should be allowed for the LLF portion of Sky's claim for attorney's fees and costs.

### B.    Specific Bases to Deny Sky's Fees and Costs – Ferrelle Burns, P.A.

The Court will focus its analysis as to the FB fee portion of Sky's claim through discussing the FB Fee Summary below, but as a starting point will set forth the FB Invoices, which range from February 4, 2020 to July 8, 2021 and total $218,967.50. The invoices are as follows: (i) FB's Invoice for the period of February 4, 2020 to March 27, 2020 seeks fees of $16,808.00 and costs of $148.80; (ii) FB's Invoice for the period of April 1, 2020 to August 28, 2020 seeks fees of $94,661.00 and costs of $813.63; (iii) FB's Invoice for the period of September 1, 2020 to December 31, 2020 seeks fees of $35,094.50 and costs of $1,069.90; (iv) FB's Invoice for the period of January 4, 2021 to March 25, 2021 seeks fees of $34,068.50 and costs of $3,528.00; and (v) FB's Invoice for the period of April 2, 2021 to July 8, 2021 seeks fees of $38,335.50 and costs of $38.30.

## 1. FB Fee Summary

In the FB Fee Summary, which totals $229,791.00,[159] Sky breaks its fees paid to FB into the following seven project categories: 1) general case administration; 2) discovery with a subcategory of Motions to Compel; 3) attendance and preparation for hearings and trials other than confirmation; 4) confirmation hearings; 5) Debtor's plan and disclosure statement; 6) Sky's plan and disclosure statement; and 7) settlement/mediation. The Court finds that the hourly rates of $300.00-$350.00 for David Burns and $245.00 for Ashley Dodd are reasonable. The Court turns to the hours reasonably expended using the category billing in the FB Fee Summary.[160]

## 2. General Case Administration

Sky seeks an award of $56,883.00 for general case administration. Debtor objects to the fees based on the billable hours being lumped together, the inclusion of fees that are labeled as no charge, and the inclusion of tasks that were unnecessary to protect Sky's interest (specifically the hours expended working on Sky's Plan, the opposition to the temporary third-party injunction, and the Motion to Convert or Dismiss). Initially, the Court notes that Sky's brief did not list the total number of hours of attorney's fees it seeks for any of the project categories. Because more than one attorney worked on the case, and the attorneys' hourly billable rates differ, it is

---

[159] Doc. 701, Ex. 1. There is an almost $11,000.00 discrepancy between the $218,967.50 total of the FB Invoices and the FB Fee Summary, which Sky again fails to explain.

[160] The Court has also thoroughly reviewed the FB Invoices admitted as Exhibits 7 and 9 at the September 21, 2021 hearing on the Motion to Determine Amount of [Sky]'s Secured Claim. Were the Court to go over each FB Invoice as it did with the LLF Invoices, the result here would not change.

virtually impossible for the Court, without adding up the dozens of entries in each project category, to determine the exact number of hours Sky seeks for each project category. The Court can therefore only determine a range of hours.

Section A of the FB Fee Summary contains 138-time entries for general case administration. Most of these time entries have multiple tasks lumped together with no associated specific time. Examples of time entries in the general administration category that were not necessary to the collection and protection of Sky's claim include:

-       Feb 17, 2020 preparation for and meeting with . . . regarding aggressive approach to pursuing hotel, operating numbers of hotels . . .

-       February 26, 2020 telephone call with Walker regarding estimation of costs for Sky to refurbish and operate Seawalk in conjunction with 221 property; correspondence with Greg S. regarding same

-       March 20, 2020 strategy regarding continuance and advantageous positions to take as to Debtor

-       April 17, 2020 receipt and review of McClure's proof of claim[161]

-       May 1, 2020 correspondence with client regarding McClure claim

-       July 24, 2020 research Airbnb rates for Seawalk and measures required by Airbnb for renters . . .

-       October 1, 2020 Additional correspondence with client regarding preparation of liquidation analysis and additional changes to 3012 motion . . . preparation of rough liquidation analysis

-       October 6, 2020 preparation of supplement to Sky's Plan of Reorganization to include liquidation analysis

---

[161] On April 16, 2020, McClure Electrical Contractors, Inc. filed an unsecured proof of claim in the amount of $10,479.80 for labor and materials. Why Sky needed to do any work with respect to the McClure claim is not substantiated by the record in any way.

Many of these 138-time entries are not even related to case administration in whole or in part.

In general, a clearly oversecured creditor with virtually no risk such as Sky would have little to do for general case administration. Assuming Sky had acted as most oversecured creditors would, its general case administration actions would have been limited to: reviewing the bankruptcy case filings to ensure Sky was accurately characterized as a secured creditor; noting case deadlines; communicating only when necessary with counsel for Debtor and Sky's representatives; preparing a proof of claim; reviewing monthly operating reports; and monitoring filings not directly related to Sky. Some of this general case administration also appears to have been performed by LLF: thus, there was duplication between FB and LLF in certain areas. An experienced bankruptcy lawyer should have been able to easily accomplish these tasks in less than 15 hours of time. Giving Sky the benefit of the high end of this range and using FB's highest hourly rate of $350.00, the Court finds $5,250.00 (15 hours) to be a reasonable amount of FB's fees for general case administration in this case.

3. Discovery

Section B of the FB Fee Summary contains 90-time entries for discovery with an additional 10 entries for motions to compel. Again, many of these time entries have multiple tasks combined with no specific time referenced for each individual task. In all, Sky seeks an award of $51,827.00 for discovery. Upon review, the Court finds that the vast majority of discovery Sky conducted in this case was not necessary to the collection and protection of its claim.

46

In general, a clearly oversecured creditor such as Sky would have little need to conduct discovery beyond participating in a creditors' meeting[162] at which Debtor's representative must appear to testify. Sky's inquiries at this point should have been narrowly focused on questions aimed at confirming its position was secured, confirming Debtor had no basis upon which to challenge Sky's lien, and addressing related matters. Sky's reasonable fees and costs for preparing for and participating in a Section 341 Meeting of Creditors in this case would be 3 to 4 hours.

Giving Sky the benefit of the doubt that some additional discovery was needed does not translate to 100-time entries and $51,827.00 in fees. Even if the Court considers what discovery beyond the § 341 Meeting of Creditors would have been reasonable, if Sky's actions had resembled those typically taken by an oversecured creditor, its discovery actions would have been limited to discovery as to Debtor's reorganization and proposed Plans. An experienced bankruptcy lawyer should have been able to easily accomplish these tasks in less than 6 to 8 hours of time in addition to 3 to 4 hours for preparing and participating in the § 341 Meeting of Creditors. Giving Sky the benefit of the high end of this range and using FB's highest hourly rate of $350.00, the Court finds $4,200.00 (12 hours) to be a reasonable amount of fees for discovery in this case.

---

[162] Section 341 of the Bankruptcy Code requires the Office of the United States Trustee to convene a meeting of creditors in all bankruptcy cases, and § 1116 requires a small business debtor to attend such meeting.

4. Attendance and Preparation for Hearings and Trials Other than Confirmation

Sky seeks an award of $8,354.50 for attending and preparing for non-confirmation trials and hearings. There were a number of hearings in this case, but the number and extent of those hearings was driven up by Sky's actions aimed at acquiring the Property. The Court finds a similarly situated creditor would not have occurred as much in hearing and trial time as FB did in this case and will approve two-thirds of the $8,354.50 requested in this category, allowing $5,570.00.

5. Confirmation Hearings

A review of Section D of the FB Fee Summary reflects 70-time entries for confirmation hearings totaling $86,056.50. Trial on confirmation of the Third Amended Plan was extended over August 26, 2020, August 27, 2020, and October 14, 2020. There was an extensive process for Debtor to confirm its plan and, as discussed in more detail below, the responsibility to expeditiously advance confirmation of a plan falls primarily on a debtor. That said, Sky's clear intention to try to wrest ownership of the Property from Debtor is inextricably intertwined with the extensive confirmation process. This is highlighted by Sky's assertion that Debtor's plan had a release when it did not and challenging confirmation on a feasibility basis when Sky was clearly oversecured and not at risk of not being paid in full on its claim.

Sky's advancing specious arguments in opposition to confirmation, coupled with its intentions, again make it difficult to parse out what portion of the $86,056.50 sought is reasonable. Additionally, Sky's efforts to challenge Debtor's plan on a

feasibility basis with experts and extensive litigation were not warranted in this case. Sky should have recognized that even if Debtor's plan failed, Sky would have been fully protected at all times and able to recover the full balance of its claim. Most Chapter 11 cases do not have such extensive challenges to feasibility. Sky's decision to pursue this course of action was ill advised because it should have known it was highly unlikely to prevail on this issue, especially considering its vastly oversecured position.

Even assuming Sky had acted as most oversecured creditors would, its confirmation actions would have been limited to challenging its treatment under Debtor's Plans and negotiating commercially reasonable plan terms. Furthermore, similarly to the Trust, if Sky had sought to resolve this relatively simple dispute instead of challenging confirmation in an effort to obtain ownership of the Property, its fees would have been substantially less in this category. An experienced bankruptcy lawyer should have been able to protect Sky's interest in the plan confirmation process for far less than $86,056.50. The most efficient way to resolve this matter would have been through negotiation of plan terms early in the case, which should have taken less than 10 to 15 hours. However, if Sky did indeed have to file objections because such negotiations, which the Court is not privy to, were not productive, then an experienced bankruptcy lawyer should have been able to prepare and prosecute a fair and focused plan objection in less than 20 hours of attorney time.

Based on the foregoing, the Court finds 25 hours of time for Sky to attend the confirmation hearing and related matters is more than reasonable in this case and awards $8,750.00 as a reasonable amount of fees for confirmation hearings in this case.

49

### 6. Debtor's Plan and Disclosure Statement

Sky seeks an award of $8,087.50 for work related to Debtor's Plan and Disclosure Statement with 12-time entries ranging from April 28, 2020 to September 11, 2020. This work seems to overlap and be duplicative of the work for confirmation hearings, and Sky fails to set forth an adequate basis as to why this category of fees is reasonable given the extensive fees it already seeks for confirmation hearings. With the bases discussed thus far and considering that an experienced bankruptcy lawyer should have been able to review Debtor's plans and disclosure statements for purposes of reasonably enforcing the Note in 10 to 12 hours, the Court finds 12 hours of time is more than reasonable for this billing category and awards Sky $4,200.00 as a reasonable amount of fees for Debtor's plan and disclosure statement in this case.

### 7. Sky's Plan and Disclosure Statement

Sky seeks an award of $10,587.50 for work related to Sky's Plan and Disclosure Statement with 17-time entries ranging from June 23, 2020 to October 30, 2020. An experienced bankruptcy lawyer could have adequately protected Sky's interest in the plan confirmation process without filing its own plan and disclosure statement, which was neither required nor warranted. Moreover, Sky's plan was not confirmable. Based on the foregoing and other bases already discussed above, the Court finds Sky should not be awarded any fees in connection with its plan and disclosure statement.

### 8. Mediation/Settlement

Sky seeks an award of $6,168.00 for work related to mediation/settlement with 11-time entries ranging from March 9, 2020 to August 4, 2020 for

mediation/settlement. The Court generally encourages parties to try to resolve matters through settlement and mediation. In this bankruptcy case, had Sky focused on settlement of its rights under the Note rather than trying to leverage into ownership of the Property, the fees it incurred would have been substantially less. Nevertheless, the Court finds time spent in settlement and mediation to be reasonable in this case and awards Sky $6,168.00 of fees for mediation/settlement.

9.   FB Costs Summary

Finally, the Court will allow the following costs from FB's Invoices:

(a)     FB's Invoice for the period of February 4, 2020 to March 27, 2020 seeks costs of $148.80, of which the Court will allow $48.40, comprised of a $21.40 PACER fee and a $27.00 charge for recording the assignment of mortgage as to the Property. The Court will not allow the remaining $100.00 because it is not clear what the charge is for.

(b)     FB's Invoice for the period of April 1, 2020 to August 28, 2020 seeks costs of $813.63, the vast majority of which are related to third party discovery, which the Court does not find to be reasonable. The Court will allow PACER fees of $73.80 and a Courtcall fee of $22.50 for total costs of $96.30.

(c)     FB's Invoice for the period of September 1, 2020 to December 31, 2020 seeks costs of $1,069.90, which are almost entirely related to third party discovery and Sky's Plan and Disclosure Statement, which the Court finds to be unreasonable. The Court finds that reasonable costs for this period total $124.60.

(d)     FB's Invoice for the period of January 4, 2021 to March 25, 2021 seeks costs of $3,528.00, none of which relate to reasonable activities in protecting Sky's interest and none of which will be allowed.

(e)     FB's Invoice for the period of April 2, 2021 to July 8, 2021 seeks costs of $38.50. The Court finds the costs, which represent PACER charges, to be reasonable and will allow them.

Therefore, based on the above, the Court will allow FB's costs in the amount of $307.80.

## C. NLA's and Sky's Remaining Costs

In addition to the foregoing and to the extent not clearly discussed, costs associated with actions that were focused on acquiring the Property should not be taxed to the Debtor. These include costs of appraisals, expert witnesses, and third-party discovery. They also include costs associated with Sky's efforts to: (i) seek dismissal of the bankruptcy case, (ii) appoint an examiner or trustee, and (iii) prepare and seek confirmation of Sky's plan of reorganization.

In total, the Court finds that Sky is entitled to recover from Debtor $34,138.00 in fees (approximately 97.5 hours at a $350.00 hourly rate)[163] and $307.80 in costs under the FB Invoices as reasonable and part of its secured claim in this bankruptcy case.

---

[163] The Court again notes that 97.5 hours of attorney time is on the higher end of what would have been reasonably required to protect Sky's interest in this bankruptcy case for the work done by FB.

D. Lodestar factors

Having discussed the evidence before the Court and the reasonableness of Sky's fees and costs from the perspective of an experienced bankruptcy lawyer representing a clearly oversecured creditor seeking to protect its interest, the Court now turns to the lodestar factors.

(1) The time and labor required: As discussed above, the time and labor required to protect Sky's interest was far less than the time actually spent by Sky. The primary reason for the excessive time and labor is that Sky was focused on acquiring the Property rather than seeking to protect its interest.[164]

(2) The novelty and difficulty of the questions: This bankruptcy case was a relatively straightforward single asset real estate case. There is nothing novel or difficult about an unchallenged first mortgage holder with a large equity cushion that is receiving adequate protection payments.[165] There were no novel or difficult questions presented. Rather, Sky, in its attempts to acquire the Property, unnecessarily made what should have been a quick and simple reorganization into a tangled and disjointed process that resulted in excessive attorney's fees and costs.

(3) The skill requisite to perform the legal service properly: This was not a complex bankruptcy case, and the skill to properly represent NLA and Sky in

---

[164] *See In Re Reorganized Lake Diamond Assocs.*, 367 B.R. at 875-876.

[165] *Id.* at 876 (noting that similar circumstances warranted "very limited legal interaction.").

protecting their interest would be categorized at best as a moderate level. As noted, an experienced bankruptcy lawyer focused on protecting Sky's interest rather than trying to litigate its way into ownership would have expended far less time in representing NLA and Sky to protect their interest.

(4) The preclusion of employment by the attorney due to acceptance of the case: "Typically, preclusion of employment presumes that an attorney does not generally engage in the sort of representation for which fees are being requested and, therefore, is prevented from undertaking a customary amount of additional work due to the increased time demand of that particular case."[166] There is no real evidence here as to this factor nor is this factor overly relevant to this bankruptcy case.

(5) The customary fee: This has been discussed at length. A customary fee for an oversecured creditor would be substantially less than what Sky seeks. Such a customary fee would be more in line with the fees incurred by the Trust, which appear to be approximately $35,000.00.

(6) Whether the fee is fixed or contingent: This factor is not overly relevant here. The fee was neither fixed nor contingent. Typically secured creditors in bankruptcy cases such as this one engage lawyers who bill hourly.

(7) Time limitations imposed by the client or the circumstances: This factor is not relevant here.

---

[166] *In re King*, 546 B.R. 682, 730 (Bankr. S.D. Tex. 2016).

(8) The amount involved and the results obtained: The amount involved is the amount of Sky's claim of approximately $750,000.00. The result obtained by Sky was largely a huge loss. If Sky had acted as a similarly situated creditor, it would have incurred substantially less fees and achieved a far better result.

(9) The experience, reputation, and ability of the attorneys: The Court has no qualms with the experience, reputation, and ability of the attorneys in this case. The Debtor, NLA, and Sky had good counsel representing them. The issue here was client driven action, primarily by Sky in attempting to acquire the Property.

(10) The "undesirability" of the case: There is no evidence that would suggest this was an undesirable case.

(11) The nature and length of the professional relationship with the client: This factor is not overly relevant here. Whether this was Sky's counsel's first representation of Sky or whether there was a long-term attorney-client relationship would not impact the amount of reasonable time expended to protect Sky's interest.

(12) Awards in similar cases: As discussed in the context of the *Lake Diamond* case, other cases analyzing fees for oversecured creditors, and the Trust's fees, the amount Sky seeks to recover for attorney's fees and costs greatly exceeds awards in prior similar cases.

Upon a review of the *Johnson* factors, the Court does not find that an adjustment, either up or down, under the lodestar method analysis is warranted in this case.

**Conclusion**

For over two decades, one of the Court's primary areas of expertise in the private sector was the representation of secured creditors and debtors in Chapter 11 single asset real estate cases. Undeniably, this case should have been a relatively simple Chapter 11 real estate case. However, Sky's actions, despite its status as a well oversecured creditor, are the primary reason this case became complicated and protracted. To give some deference to Sky, Debtor's efforts and diligence in advancing this case to confirmation can be called into question just as Sky's motives have been. Perhaps it was NLA's and Sky's overly aggressive actions to try to leverage into owning the Property or the coronavirus pandemic that resulted in it taking over 30 months to confirm a plan,[167] but that is an unusually long time for a relatively simple Chapter 11 real estate case to get to confirmation, and Debtor bears some of the responsibility. Whatever the reason, the amount Sky is entitled to recover for fees and costs was increased by certain actions of Debtor during the course of the case, and the Court recognized this in awarding fees in what would be the higher range of reasonableness for a case like this one.

The Court also notes a question of credibility in Sky's position and its ties to the Trust, especially after the Trust cut a deal. NLA and the Trust were clearly working

---

[167] An April 23, 2024 report from the American Bankruptcy Institute Task Force on Subchapter V Chapter 11 Cases notes the average duration of a standard Chapter 11 case is 470 days, which is less than half the time Debtor took to achieve confirmation of a plan. *See Final Report of the American Bankruptcy Institute Subchapter V Task Force,* p. 6. (citing written statement of the Honorable Hannah Blumenstiel, United States. Bankruptcy Court for the Northern District of California).

together to help improve their respective positions. The Trust, which was also oversecured but to a lesser extent than Sky in a junior lien position, settled with relatively low fees. Sky in a superior lien position did not and aggressively pursued ownership of the Property. Hindsight is 20/20, but had Sky settled as the Trust did, it would have a modified loan with far less attorney's fees and costs incurred. Rather, very similarly to the creditor in *Lake Diamond*, Sky elected to try to litigate its way into ownership of the Property and now tries to spin that effort into having protected its rights. As an oversecured creditor, Sky took on the risk, its efforts failed, and it is not entitled to recover the majority of the fees and costs sought. Based on the foregoing, the Court finds that Sky is allowed $48,663.00 in attorney's fees and $926.78 in costs, for a total of $49,589.78. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.


Attorney Kevin Paysinger is directed to serve a copy of this order on interested parties and to file a proof of service within three days of the date of the order.